Lloyd R. HUMMEL and Robert A. Gartner, on behalf of themselves and all other members of Local 492, Bakery and Confectionery Workers' International Union of America, AFL–CIO, similarly situated

v.

Robert C. BRENNAN, Secretary-Treasury

and

George Szatkowsky, President-Business Manager

and

Local 492, Bakery and Confectionery Workers' International Union of America, AFL–CIO.

Civ. A. No. 79–856.

United States District Court, E. D. Pennsylvania.

July 9, 1979.

On Application for Counsel Fees and Costs July 26, 1979.

142

Barry E. Bressler, Philadelphia, Pa., for plaintiffs.

Mark P. Muller, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Plaintiffs Lloyd R. Hummel ("Hummel") and Robert A. Gartner ("Gartner") brought this action pursuant to Section 102, 29 U.S.C. § 412, of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), *as amended*, 29 U.S.C. § 401 *et seq.*, against defendants Robert C. Brennan ("Brennan"), Secretary-Treasurer of Local 492; George Szatkowsky, President-Business Manager of Local 492; and Local 492 of the Bakery and Confectionery Workers' International Union of America, AFL–CIO ("Local"). Plaintiffs challenge the method by which the Local enacted a union dues increase, by ballot vote at five separate shop unit meetings, as being violative of the notice and secret ballot requirements of Section 101, 29 U.S.C. § 411(a)(3)(A) and 29 U.S.C. § 402(k), and the constitution and

bylaws of Local 492. The plaintiffs sought to enjoin the collection of dues at the increased rate, restitution of any excess dues collected from Local 492 members and reasonable attorney's fees and costs.

In response to defendants' motion to dismiss plaintiffs' complaint, claiming that plaintiffs failed to exhaust internal union remedies pursuant to 29 U.S.C. § 411(a)(4), this Court on April 5, 1979, after a hearing, denied the defendants' motion and entered an Order granting plaintiffs' request for a preliminary injunction. On April 25, 1979, the Court entered an Opinion making findings of fact and conclusions of law in support of the Order of April 5, *Hummel v. Brennan,* 469 F.Supp. 1180 (E.D.Pa.1979), which held that the voting procedures at all five shop unit elections violated the secret ballot and notice requirements of §§ 411(a)(3)(A) and 402(k) of the LMRDA.

By Order dated April 27, 1979, upon agreement of counsel and the Court, in furtherance of the Court's Order of April 5, 1979, the defendants were restrained and enjoined from collecting from members of Local 492 union dues in excess of $11.00 per month/per member. The defendants were ordered to establish an escrow account for the deposit of those dues collected in excess of $11.00 per month/per member. The Order also required plaintiffs to post a cash bond. Permanent injunctive relief was granted on May 10, 1979, following a hearing.

Presently before the Court is the plaintiffs' motion for certification of this suit as a class action, pursuant to Fed.R.Civ.P. 23(a), (b)(2) and (b)(3). For the reasons stated below, plaintiffs' motion for class action determination will be granted and we will certify, pursuant to Fed.R.Civ.P. 23(a) and (b)(2), the following class:

All persons who, by reason of membership in Local 492 of the Bakery and Confectionery Workers' International Union of America, AFL–CIO, have paid, by payroll deduction or otherwise, any increase in dues to the Local by reason of the dues increase ruled invalid by this Court's Memorandum Opinion of April 25, 1979,

and this Court's Orders of April 5, 1979; April 27, 1979; and, May 10, 1979.

■ Initially, the defendants have raised the issue of whether class certification is warranted at all, arguing that any relief which could be granted by the Court to the class as a whole has, in effect, already been granted by the Court's Order of April 27, 1979. It is acknowledged that the Court's invalidation of the January 1979 dues increase election has effectively granted relief to the members of Local 492 without class certification. However, absent class certification, plaintiffs' additional requested relief consisting of reimbursement of all dues collected in excess of $11.00 per month/per member would only compel reimbursement to the persons named as parties to the suit and would not directly require, under the threat of contempt proceedings, reimbursement of excess dues to all other members of Local 492. The Court's determination of the reimbursement issue as to the party plaintiffs does have a collateral estoppel effect as to the other members of the Local. However, it would compel the initiation of time-consuming and costly individual lawsuits for relatively small sums of money. Alternatively, the Court declines to leave the effective enforcement of this action in respect to nonparties to the defendants alone, as was deemed permissible in *Tindall v. Hardin,* 337 F.Supp. 563, 567 (W.D.Pa.1972). There, the court held that Rule 23(b)(2) class certification was unnecessary due to the existence of several hundred separate factual issues and the court's belief that the defendant state would honor the court's order· as legal precedent and make voluntary reimbursement of moneys owed to all aggrieved persons even though not parties to the litigation.

In the instant case, we are not faced with several hundred factual issues concerning individual reimbursement because of the existence of employee earnings records which should render certain the sums deducted for union dues. In that regard, the Court is not blindly opening the "Pandora's box" that has concerned other courts in

Rule 23(b)(2) certification cases. *See Rhodes v. Weinberger,* 388 F.Supp. 437, 444 (E.D. Pa.1975); *Paddison v. Fidelity Bank,* 60 F.R.D. 695, 698 (E.D.Pa.1973). Further, under the standard in *Tindall,* this Court, in its discretionary judgment believes that, by reason of the adversary relationship of the Local to not only the plaintiffs, but to others adversely affected by the abortive dues increase, the prompt resolution of the problem of the reimbursement of excess dues collected would best be served by class certification. Additionally, we are not faced with the doctrine of judicial comity that was present in *Tindall.*

Class certification would require the reimbursement of any excess dues collected to all class members and serve to further strengthen the impact of the Court's Order by allowing enforcement through court proceedings if the Local failed to reimburse any excess dues owed. *See* 3B Moore's Federal Practice, ¶ 23.40[3] at 23–296.

Finally, we adopt the reasoning of the court in *Mendoza v. Lavine,* 72 F.R.D. 520 (S.D.N.Y.1976). There, in an action challenging the administration of public assistance programs by the City of New York, the court held that, although class certification might be unnecessary because the benefit of injunctive or declaratory relief would run to all persons similarly situated:

> . . . [n]evertheless, it seems advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole. *See Perez v. Lavine,* 378 F.Supp. 1390 (S.D. N.Y., Dec. 13, 1974). Were this unnecessary, class certification pursuant to Rule 23(b)(2) would, arguably, never be necessary. Moreover, class certification will also help to avoid any future problem of mootness. *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

72 F.R.D. at 523.

I. *PREREQUISITES TO MAINTAINING A CLASS ACTION*

■ In order for the plaintiffs to maintain a class action, they must satisfy the requirements of Fed.R.Civ.P. 23(a), which states:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*In Re Plywood Anti-Trust Litigation,* 76 F.R.D. 570, 577 (E.D.La.1976). Furthermore, along with meeting the requirements of Fed.R.Civ.P. 23(a), the plaintiffs must also persuade the Court that the action is properly maintainable under one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The plaintiffs seek certification of a class pursuant to Fed.R.Civ.P. 23(b)(2) and (b)(3). Therefore, the plaintiffs bear the burden of establishing that each of the requirements of Rules 23(a) and (b) have been satisfied as to the proposed class. *In Re Plywood Anti-Trust Litigation, supra,* 76 F.R.D. at 577; *Muth v. Dechert, Price & Rhoads,* 70 F.R.D. 602, 603 n.1 (E.D.Pa.1976).

### A. Numerosity

Fed.R.Civ.P. 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Here the proposed class would be composed of approximately two thousand members of Local 492, thereby satisfying the requirements of Rule 23(a)(1). *See Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690 (E.D.Pa.1977); *In Re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 355 (E.D.Pa.1976).

### B. Commonality

Fed.R.Civ.P. 23(a)(2) requires that there be "questions of law or fact common to the class." Defendants allege that the voting procedures used to increase the union dues at the five separate shop unit meetings were not identical, thereby creating different issues of law and fact. However, it is not necessary that each question of law or

fact be common to every class member. *Axelrod v. Saks & Co.,* 77 F.R.D. 441, 444 (E.D.Pa.1978). Nor is it required, for purposes of Rule 23(a)(2), that such common questions be shown to predominate over individual questions as is required under Rule 23(b)(3). Furthermore, at the hearing on the preliminary injunction, defendant Brennan testified that the election procedures and notice practices at all five shop unit meetings were significantly equivalent.

### C. Typicality

The significant similarities between the election and notice procedures at the five shop unit meetings, one of which the named plaintiffs attended, is dispositive of the requirement of Rule 23(a)(3) that the claims of the named plaintiffs be typical of the claims of the class they seek to represent. In the case at bar, the same general course of conduct by the defendant Local, in attempting to enact a dues increase contrary to LMRDA requirements of notice and secret ballot, equally affected the class representatives and the class. It is not necessary that the claims of the representatives be identical to those of the class; only similarity is required for the Court to decide that the representative party will adequately represent the interests of the class. *Cohen v. Uniroyal, Inc., supra,* 77 F.R.D. at 691–692; *Kaufman v. Lawrence,* 76 F.R.D. 397, 399 (S.D.N.Y.1977); *Mendoza v. Lavine, supra,* 72 F.R.D. at 523. Whatever minor factual differences existed between the five shop unit elections, these differences in factual posture are not sufficient to refuse certification as long as a conflict does not exist such that the interests of class members are placed in significant jeopardy. *Sley v. Jamaica Water & Utility, Inc.,* 77 F.R.D. 391, 394–395 (E.D.Pa.1977). This has not been evidenced in the present case.

### D. Representativeness

Fed.R.Civ.P. 23(a)(4) requires that there be an adequate class representative, which is to be based on two factors: (1) plaintiffs' attorney must be qualified, experienced and able to vigorously conduct the action; and,

(2) plaintiffs must not have interests that are antagonistic to the interests of the class. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Plaintiffs are represented by the Philadelphia law firm of Meltzer & Schiffrin. To date, this firm, which has experience in the area of labor relations law, has actively, vigorously and competently litigated the instant action.

Defendants argue that the plaintiffs do not fairly and adequately protect the interests of the class, because the relief sought adversely affects three hundred members of the proposed class both financially and philosophically. In response thereto, plaintiffs correctly refer this Court to *Gates v. Dalton*, 67 F.R.D. 621 (E.D.N.Y.1975), where there was a similar dispute over union election notice and voting procedures under the LMRDA. The court there stated:

> . . . A finding of antagonism sufficient to preclude a truly representative action by plaintiff may be based on any of a number of different factors, but in every case the conflict must be "genuine," *Madonick v. Denison Mines Limited*, 63 F.R.D. 657, 658–59 (S.D.N.Y.1974), and must go to the heart of the controversy
>
> . . .
>
> The essence of this controversy is clearly the protection of federally-secured rights of union members and redress for their infringement. Defendants' suggestions of antagonism, even if accepted at face value, in no way establish that the members of Local 14–14B are antagonistic to continue preservation and protection of their bill of rights under 29 U.S.C. §§ 411, 412 . . . . .

67 F.R.D. at 630–631.

Defendants argue, without evidentiary support, that there are philosophical differences between the class representatives and the class members. Defendants state that "there are many members of the Local employed at Keebler and Nabisco who are of the opinion that it is imperative that the continued reduction of the treasury of the Local Union is inimical to the best intersts

[*sic*] of the Union as an organization and them as individuals." *See* Defendants' Answer in Opposition to Class Certification, at 4. However, plaintiffs' claim does not go to the issue of whether or not the Local is justified in increasing its dues rate, but rather, whether the election procedures employed by the Local to enact a dues increase were procedurally valid as defined under the LMRDA, 29 U.S.C. §§ 411(a)(3)(A) and 402(k). The Court refused to hear evidence of the financial stability of the Local at the injunctive hearing due to its irrelevancy and similarly holds that issue to be undispositive of the class certification determination now before the Court.

Second, defendants allege that the financial interests of members of Local 492 employed by the Keebler and Nabisco shops differ from those of members employed by the other three union shops. The defendants argue that the "percentage" dues increase authorized by the January 1979 election would only affect those members at a portion of the union shops, while the members at the other shops are low enough on the salary scale that they would only be required to pay the minimum increased rate of $10.00 per month/per member. Further, the defendants contend that the $11.00 per month/per member rate imposed by the Court's Order of April 5, 1979, would be an increase over the attempted increased rate. This argument ignores the fact that the Local itself requested the $11.00 per month rate, which is composed of the previous $9.00 per month rate plus a $2.00 increase ordered by the International Union and which would have been imposed in absence of this Court's Order. Therefore, the Court is only ordering what had already been required by the International Union's mandate.

Finding no genuine antagonism going to the heart of the controversy as required under *Gates*, this Court finds that the requirements of Rule 23(a)(4) have been satisfied.

## II. *Rule 23(b)(2) Class Certification*

Plaintiffs move to have this action certified as a class action under either of Rules

23(b)(2) or 23(b)(3).[1] In *Connor v. Highway Truck Drivers & Helpers*, 68 F.R.D. 370 (E.D.Pa.1975), involving a similar action for violation of the LMRDA balloting procedures in a union dues increase election, the court, in addressing the issue of class certification held:

. . . Clearly, a suit under Section 101(a)(3) of Title I of the Labor-Management Reporting and Disclosure Act presents a paradigm of the lawsuit suitable to class action treatment under (b)(2) with respect to the cohesiveness of the claims to be tried in the class action. In fact, based on our analysis of the law under [S]ection 101(a)(3) and the proof necessary to establish a violation thereunder as set out in our prior opinion, there will certainly be fewer and far simpler non-class questions present in this type of action than in a Title VII action, both with respect to any deserved injunctive and/or monetary relief.

68 F.R.D. at 374.

The request for restitution here, as in *Connor*, is collateral to the main issue of injunctive relief. Therefore, under *Wetzel v. Liberty Mutual Insurance Co., supra*, 508 F.2d at 251–252, the issuance of collateral restitutional relief does not preclude a Rule 23(b)(2) class certification. This action fits squarely within the requirements of Rule 23(b)(2), because the Local has acted on grounds generally applicable to the entire class by implementing a dues increase without comporting with LMRDA election requirements, thereby making final injunctive relief appropriate and necessary in order to effectively bind the Local from enacting an invalid dues increase. The dues increase election must rise or fall as a whole in order to conclusively bind the Local and invalidate an illegal election. For this very reason, Rule 23(b)(3) class certification would be inappropriate. As the Court in *Wetzel v. Liberty Mutual Insurance Co., supra*, held:

. . . Virtually every class action meeting the requirements of 23(b)(2) will also meet the less severe requirements of 23(b)(3). If the actions are classified under (b)(3), members of the class could elect to opt out and thereby not be bound by the judgment. This would permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication. As discussed above, the procedural protections of (b)(3), opting out and notice, are necessary because of the heterogeneity of the (b)(3) class. They are unnecessary for the homogeneous (b)(2) class.

508 F.2d at 252–253 (citations omitted).

That court further stated that, in regard to the absence of the right to opt out of a (b)(2) class action:

. . . [a]ny resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.

508 F.2d at 249. *See also Presseisen v. Swarthmore College*, 71 F.R.D. 34, 47 n.14 (E.D.Pa.1976); *Van Gemert v. Boeing Co.*, 259 F.Supp. 125, 130–131 (S.D.N.Y.1966).

Therefore, finding that the requirements of Rules 23(a) and (b)(2) have been satis-

---

1. Fed.R.Civ.P. 23(b) states, in pertinent part:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**148**

fied, a class action certification will, accordingly, be granted.

### ON APPLICATION FOR COUNSEL FEES AND COSTS

Presently before the Court is the plaintiffs' application for the award of counsel fees and costs in connection with the instant action. Defendants, in response, have filed a motion to strike the plaintiffs' motion for counsel fees and costs. For the reasons stated below, plaintiffs' counsel will be awarded fees in the amount of $8,000 and their out-of-pocket costs of $102.65. The defendants' motion will be dismissed as moot based on the granting of plaintiffs' motion.

This action was commenced in March of 1979 by plaintiffs Lloyd R. Hummel and Robert A. Gartner, on their own behalf and on the behalf of a class consisting of approximately two thousand members of Local 492 of the Bakery and Confectionery Workers' International Union of America, AFL–CIO ("Local"), seeking injunctive and monetary relief against defendants Robert C. Brennan, Secretary-Treasurer of Local 492; George Szatkowsky, President-Business Manager of Local 492; and Local 492. Plaintiffs challenged the method by which the Local effectuated a dues increase by ballot vote at five separate shop unit meetings in January of 1979 as being violative of Section 101. 29 U.S.C. § 411(a)(3)(A), of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"). Permanent injunctive relief was granted on May 10, 1979, enjoining and restraining the defendants from collecting from members of Local 492 union dues in excess of $11.00 per month/per member. The Court also ordered the defendants to establish an escrow account for the deposit of those dues collected in excess of $11.00 per month/per member.[1] Finally, the January 1979 aggregate shop unit dues vote was declared invalid as violative of the secret ballot and notice requirements of §§ 411(a)(3)(A) and 402(k) of the LMRDA. *See Hummel v. Brennan,* 469 F.Supp. 1180 (E.D.Pa.1979). The action

was certified as a class action by the Court on July 9, 1979.

■ Plaintiffs' recovery in the instant action has rendered a valuable service to all members of Local 492 by vindicating and protecting their right under the LRMDA to a secret ballot vote for dues increases after receiving reasonable notice. Further, plaintiffs' relief has provided restitution of any excess dues collected from members of Local 492. In *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1972), the Supreme Court held in a class action suit under the LMRDA that counsel fees may be awarded:

. . . Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial "not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs." *Yablonski v. United Mine Workers of America,* 150 U.S.App. D.C. 253, 260, 466 F.2d 424, 431 (1972). Thus, as in *Mills,* reimbursement of respondent's attorneys' fees out of the union treasury simply shifts the costs of litigation to "the class that has benefited from them and that would have had to pay them had it brought the suit." *Mills v. Electric Auto-Lite Co., supra,* at 397. See also *Yablonski v. United Mine Workers of America, supra; Robins v. Schonfeld,* 326 F.Supp. 525 (S.D.N.Y.1971); *Cefalo v. International Union of District 50 United Mine Workers,* 311 F.Supp. 946 (D.C.1970); *Sands v. Abelli,* 290 F.Supp. 677 (S.D.N.Y.1968). We must therefore conclude that an award of counsel fees to a successful plaintiff in an action under § 102 of the LMRDA falls squarely within the traditional equitable power of federal courts to award such fees whenever "overriding considerations indicate the need for such a recovery." *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 391–392, 90 S.Ct. 616.

*Id.,* at 8–9, 93 S.Ct., at 1948.

Defendants have responded, without evidentiary support, that assessing counsel

---

1. The previous union dues rate had been $9.00 per month/per member.

fees and costs against the Local would result in serious financial harm to the Local. The Court, in *Hall v. Cole, supra,* responded to a similar argument by stating:

> Petitioners contend that the payment of counsel fees out of the union treasury might deplete union funds to such an extent as to impair the union's ability to operate an an effective collective-bargaining agent and to endanger union stability. Although this consideration is undoubtedly an important one, it is relevant, not to the *power* of federal courts to award counsel fees generally, but, rather, to the exercise of the District Court's discretion on a case-by-case basis.

*Id.,* at 9 n.13, 93 S.Ct., at 1948.

█ While this Court has the power under *Hall* to assess counsel fees against the Local under the LMRDA, the amount of counsel fees must be reasonable. The Third Circuit Court of Appeals has formulated an equation for determining the reasonableness of counsel fees in class action litigation through a series of opinions. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1936) (*en banc*) (*Lindy II*); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*); *Hughes v. Repko,* 578 F.2d 483 (3d Cir. 1978); *Merola v. Atlantic Richfield Company,* 515 F.2d 165 (3d Cir. 1975). The equation involves, first, a determination of the value of time actually expended to produce a "lodestar" amount. Then the Court, in its discretion, can examine various factors to adjust the "lodestar" amount to reach a reasonable value for counsel fees. *Lindy I, supra.* The factors to be examined have been set forth by numerous courts and include:

(1) whether plaintiff's counsel had the benefit of a prior judgment of decree in a case brought by the Government

(2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel,

(3) time and labor spent,

(4) magnitude and complexity of the litigation,

(5) responsibility undertaken,

(6) the amount recovered,

(7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,

(8) what it would be reasonable for counsel to charge a victorious plaintiff.

*City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 470 (2d Cir. 1974) *quoting Trans World Airlines, Inc. v. Hughes,* 312 F.Supp. 478, 480 (S.D.N.Y.1970).

█ Plaintiffs' counsel state in their submitted affidavits[2] that they expended 203.7 hours of attorney's time, totaling $15,195, and out-of-pocket costs of $102.65 during the brief course of this litigation, at hourly rates ranging from $60 to $125. The Court finds both the time expended and the hourly rates charged to be unreasonable based on the following factors.

The legal issues presented in the instant action were neither novel, complex nor questions of first impression. The facts presented were, for the most part, a matter of record and easily obtainable from posted shop notices, union minutes and payroll records. All eleven witnesses that briefly testified at the three hearings resided locally and were either parties to the action, union members or friends of members and, therefore, easily procurable. No preparation or reimbursement for expert testimony was required nor was discovery taken or extensive traveling involved. All factual events

---

**2.** Plaintiffs' counsel contend that an evidentiary hearing on counsel fees is mandated under *Lindy I.* The language of *Lindy I* is clear on this issue:

> . . . [O]pposing interests should be afforded a hearing to provide an evidentiary basis for resolution of disputed *factual* matters . . . .

487 F.2d at 169 (emphasis added). Therefore, an evidentiary hearing is only required when material facts are in dispute. This Court finds that there are no material facts in dispute here and declines to hold an evidentiary hearing on settled facts. *See Imprisoned Citizens Union v. Milton Shapp et al.,* 473 F.Supp. 1017, 1021 (E.D.Pa.1979).

surrounding the litigation were brief in duration, occurring mainly at one Local shop unit meeting which served as the "model meeting" to aid the Court in its determination. The Court's records reflect a total of 5 hours of Court time at three hearings and one conference with the Court. Furthermore, the following examples evidence the duplication of efforts, unnecessary preparation and exorbitant hourly rates of plaintiffs' counsel:

(1) On March 15, attorney Bressler expended 1 hour involving "research [of] act" at $60 per hour. While on the same day, attorney Bockol spent 7 hours of "research cases" and 1 hour of "M & K" at $75 per hour. Still another attorney, Linsenberg, expended 1.5 hours on "preparation" at the excessive rate of $125 per hour.

(2) On March 16, attorney Bockol expended 8 hours in "preparation [of] memo of law" at $75 per hour; while at the same time, attorney Bressler was engaged in 2 hours of "preparation" at $60 per hour.

(3) Finally, on March 21, the date of the principal hearing in the action, which the Court's records reflect as having lasted only 2 hours, attorney Bressler logged 8 hours of time; and attorney Linsenberg, who actually conducted plaintiffs' case at the hearing, recorded 4 hours of time.

The above examples evidence an apparent continuing duplication of legal effort in the overlapping of duties by three attorneys at high hourly rates on a relatively uncomplicated case.

Accordingly, based on the above factors, examples and the authority of *Hall v. Cole*, the Court will order the award of fees and costs in the amount of $8,102.65. An appropriate Order will be entered.