Charles F. TEAS et al., Plaintiffs,

v.

**LOCAL 413, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA et al., Defendants.**

No. C–2–76–560.

United States District Court,
S. D. Ohio, E. D.

Sept. 7, 1978.

**14**

Robert Karl Handelman, Columbus, Ohio, for plaintiffs.

Jerry L. Riseling, Columbus, Ohio, Sorrell Logothetis, Dayton, Ohio, Joseph H. Hans, J. Paul McNamara, William H. Woods, Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This is an action under the Labor-Management Reporting and Disclosure Act of 1959 for injunctive, declaratory and monetary relief. Plaintiffs allege that a local union dues increase assessed following a February 1975 election was fraudulently imposed in violation of 29 U.S.C. § 411(a)(3). Plaintiffs seek injunctive relief against the continued collection of the increased dues, and an accounting and refund of the dues allegedly overpaid. Plaintiffs also assert a claim under 29 U.S.C. § 501 for breach of fiduciary responsibilities against Vito Mango, the former president of the local union. The defendant Local 413 has also alleged violations of 29 U.S.C. § 501 against defendant Mango.

Following the commencement of this action, the defendant unions filed a third-party complaint against Great American Insur- · ance Company. By an order filed April 28, 1978, the Court granted partial summary judgment in favor of Great American and granted a separate trial on the remaining claims against Great American.

On July 1, 1977, the Court certified this case as a class action pursuant to Fed.R. Civ.P. 23(b)(2).

Following trial to the Court, the matter is now before the Court for decision. The Court's findings of fact and conclusions of law are set forth hereinbelow. Fed.R.Civ.P. 52(a).

I

Defendants International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT) and Local 413 of the IBT (Local 413) are "labor organizations" within the meaning of 29 U.S.C. § 402(i) engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 402(i). Local 413 is presently one of three local unions which together comprise what was known as Local 413 in 1975. The Court will refer to Local 413 as it existed in 1975, then including the other two locals (159 and 284). Defendant Vito Mango was the president and an officer within the meaning of 29 U.S.C. § 402(n) of defendant Local 413 from January 1974 to February 9, 1976.

The plaintiffs were at all relevant times dues-paying members in good standing of Local 413. 29 U.S.C. § 402(o). The plaintiff class is composed of all members of Local 413 who were assessed dues increases as a result of the February 1975 dues election.

This Court has jurisdiction over the subject matter pursuant to 29 U.S.C. §§ 412 and 501(b).

*Findings of Fact*

During February 1975 defendant Mango proposed a dues increase of one, two or three dollars per month, depending on pay range, to the members of Local 413. The proposed dues increase was presented to the membership for approval by an election to be conducted by secret ballot through the use of the mails. In order to assure the

passage of the dues increase, defendant Mango and certain other officers of Local 413 conspired to and did obtain approximately 1600 ballots and 2000 additional return envelopes from Universal Printing Company in addition to the approximately 9500 ballots and return envelopes which had been ordered by the Local 413 dues election committee. The additional ballots were secretly obtained and marked in favor of the dues increase without the knowledge or consent of the members of Local 413. The fraudulently marked ballots were then placed in return envelopes and mailed to the post office box which had been rented for the dues election. Without the fraudulent and unlawful acts of defendant Mango and certain other officers of Local 413, the dues increase would have failed.

As a result of the February 1975 election, dues were assessed and collected from members of Local 413 at the increased rate for each month from April 1975 through November 1, 1976.

On February 20, 1975, certain members of Local 413 filed an action in the Court of Common Pleas, Franklin County, Ohio, to enjoin the dues election. This action was based on the failure of Local 413 to provide sufficient notice of the dues election to its members in accordance with the by-laws of Local 413. The plaintiffs in that action also alleged that the procedure established for the election did not provide any means of identifying the sender of return ballots to insure that only ballots from members in good standing would be counted and that an accurate count of ballots for and against the increase could be made. The Court of Common Pleas declined to enjoin the dues election and the action was thereafter dismissed without prejudice on June 21, 1975. The Court can find no indication in the papers filed with the Court of Common Pleas or in the testimony adduced at the trial of the instant case that the plaintiffs in the state court action or the general membership of Local 413 had knowledge of the fraudulent acts which actually occurred in connection with the dues election.

Between August 1 and September 3, 1975, defendant Mango caused payment to be made to Universal Printing Company by Local 413. This payment included the sum of $74.34 to pay for the 1600 ballots and 2000 reply envelopes ordered for the February 1975 dues election without the knowledge or consent of the members of Local 413.

Defendant Mango also caused other payments to be made with Local 413 funds for non-union expenditures. These payments included $108.26 on May 24, 1974, for lodging at the Water Tower Hyatt House in Chicago, Illinois, $95.27 on July 28, 1974, for round-trip airline ticket from Columbus, Ohio, to Chicago, Illinois, for Wilma Lannon, and $2,257.20 on September 24, 1974, for executive jet transportation between Columbus, Ohio, and Chicago, Illinois. Each of these payments was made at the direction of defendant Mango with funds belonging to Local 413 for the personal benefit or pleasure of defendant Mango. None of these payments was a legitimate business expense of Local 413.

Although these expenditures were included in the financial reports of Local 413 and ratified by the members of Local 413 at general membership meetings, the Court finds that the general membership was unaware at the times of ratification that these expenses were for the personal benefit of defendant Mango and not related to the business of the union.

During January 1976 the IBT held hearings lasting six days in Columbus, Ohio, to determine whether or not a trusteeship should be imposed over the affairs of Local 413 pursuant to Article VI, Section 5 of the International Constitution. At these hearings witnesses were called and questioned under oath concerning various matters, including the February 1975 dues election. In a notice to the membership of Local 413 dated February 6, 1976, the IBT General President, Frank Fitzsimmons, set forth certain findings concerning the affairs of Local 413 and imposed a trusteeship effective February 9, 1976. Among the findings made by the General President was a find-

ing that the February 1975 dues election had been conducted improperly and that certain officers and employees of Local 413 had conspired to cast between 1600 and 2000 ballots in favor of the dues increase.

With the imposition of the trusteeship on February 9, 1976, all of the officers of Local 413 were removed from office and the constitution and by-laws of Local 413 were suspended. From the imposition of the trusteeship until October 1976, there were no regular meetings of the membership of Local 413. During the period of the trusteeship the affairs of Local 413 were within the exclusive and absolute control of the trustee appointed by the General President, subject only to the review of the General President of the IBT.

There is no evidence that the IBT had knowledge of the fraud surrounding the February 1975 dues election until shortly before the imposition of the trusteeship. The Court does find, however, that the IBT knew of the improprieties in the dues election no later than February 6, 1976, when the General President issued his findings. The IBT was not only aware of the improprieties of the dues election, but acknowledged an obligation to refund the amount of the dues increase to the members of Local 413 on several occasions, including Forms LM–2 filed with the Department of Labor, a September 24, 1976, letter from the trustee to the members of Local 413, and by admissions of the trustee and counsel on the record in this case. Although the IBT knew that the dues election was improper, and although the IBT had absolute control over Local 413 through its trustee, the collection of the increased dues continued until November 1, 1976.

■ Mr. Lou Edwards was appointed trustee of Local 413 effective March 2, 1976. Although Edwards testified that he was not familiar with the events which resulted in the trusteeship of Local 413, the Court finds that he had constructive notice of the impropriety of the February 1975 dues election by reason of his position as trustee.

After his appointment as trustee, Edwards was successful in reorganizing the financial affairs of Local 413. Edwards arranged for payment of Local 413's past due debts including per capita taxes owed to the IBT and several joint councils and conferences of the Teamster's organization. There is no evidence that the financial condition of Local 413 could not have been brought current without the benefit of the increased dues then being collected, but the evidence supports an inference that the increased dues facilitated the return to fiscal soundness.

On July 9, 1976, Edwards received a letter from certain members of Local 413, including the named plaintiffs in this case, requesting the immediate cessation of further collection of the increased dues and that arrangements to be made to refund the increased dues already collected. Edwards testified at trial that he did not cease collection of the increased dues and made no dues refunds in order to preserve the status quo pending the conclusion of pending criminal charges against defendant Mango and a civil action in this Court challenging the imposition of the trusteeship. Edwards has, however, acknowledged an obligation of Local 413 to refund the dues increase to its members. In December 1976 at Edwards' direction, Local 413 opened a separate bank account designated for the repayment of the dues increase. The account was opened with a deposit of $75,-000.00, but no additional deposits had been made to this account at the time of trial, and no refunds or credits had been made to the members of Local 413.

*Conclusions of Law*

1. *Local 413*

The Court finds that the dues increase election held in February 1975 was infected with fraud. The Court holds, therefore, that the election was not conducted in conformity with the protections provided by 29 U.S.C. § 411(a)(3)(A). This fraud was perpetrated by certain of the then controlling officers of Local 413 and inured to the benefit of Local 413 as an entity distinct from its members.

■ Local 413 argues that the members are now estopped to request refund of the increased dues paid between April 1975 and November 1976 because the increased dues collected were lawfully expended for the benefit of the membership. This Court cannot accept the defendants' theory that a benevolent despot may avoid the consequences of his unlawful acts. One of the purposes of the Labor-Management Reporting and Disclosure Act of 1959 was to insure to rank and file union members that union affairs would be conducted pursuant to fair and democratic principles and not by the arbitrary acts of union leaders. *National Labor Relations Board v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175, 194–95, 87 S.Ct. 2001, 2015, 18 L.Ed.2d 1123 (1967). In *Navarro v. Gannon*, 385 F.2d 512, 518 (2d Cir. 1967) the Court stated that:

> The Congress by passing a "Bill of Rights" for union members determined that the efficiency of a monolithic union under autocratic rule was gained at too great a price if it necessitated any sacrifice in the members' rights to determine the course of their organization.

*See also, Sertic v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council*, 423 F.2d 515, 521 (6th Cir. 1970). To permit Local 413 to escape the consequences of its failure to comply with 29 U.S.C. § 411 because the fruits of the unlawful acts were used for the benefit of Local 413 members, without the members having had an opportunity to speak to the issue, would frustrate this fundamental purpose of the 1959 Act.

■ The defendant Local 413 also contends that the present action is barred by laches. Local 413 argues that the plaintiffs had knowledge of the unlawful nature of the election in February 1975 but that by their failure to prosecute the action brought in the Court of Common Pleas of Franklin County, Local 413 was induced to continue collection of the dues increase and to expend the dues collected. This Court has found, however, that the general membership was not aware of the actual fraud in the dues election in February 1975. The facts which the defendant attributes to

plaintiffs' knowledge in February 1975 did not become known until the trusteeship hearings in January of 1976. Following those hearings the Court believes that the plaintiffs vigorously and diligently pursued their available remedies. Notwithstanding the due diligence of plaintiffs, however, the Court cannot countenance an equitable defense by the perpetrators of a fraud based on the victim's failure to object.

The Court finds, therefore, that Local 413 has an equitable duty to make restitution to plaintiffs for the increased dues collected between April 1975 and November 1976 as a result of the February 1975 election.

Whether the Court should order Local 413 to refund all of the illegally collected dues directly to the plaintiffs or permit the union to retain the funds until its members have decided how they should be distributed, is a difficult issue. On the one hand, this Court agrees with the court in *Peck v. Associated Food Distributors of New England Local # 138*, 237 F.Supp. 113, 115 (D.Mass.1965), which held "[a]ll the excesses wrongfully collected are repayable." *Peck*, in other words, takes the position that a direct refund to the union members is the proper remedy for the collection of excessive and illegal dues. On the other hand, the United States Court of Appeals for the Sixth Circuit has held that the distribution of such funds is a question to be decided by the members of the union in accordance with its constitution and by-laws. *Sertic v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council*, 423 F.2d 515, 522 (6th Cir. 1970).

■ This Court believes that the circumstances of this case are sufficiently distinguishable from those in *Sertic* to warrant a refund of the excess dues directly to the union members. In *Sertic*, because of an improperly drafted ballot, union members were deprived of their right, accorded by the Act, to participate meaningfully in union affairs. Local 413 members in this case were similarly deprived. However, plaintiffs were deprived of that right as a result of actual fraud by officials of the local.

In addition, because of the nature of the ballots used in *Sertic* it was impossible to determine whether union members would have approved the increased dues assessment if that proposition had not been coupled on the ballot with the proposal to seek a wage increase. Thus, the intent of the union members as evidenced in their vote was unclear and ambiguous. By affording them an opportunity to vote on the disposition of the subsequently-collected increased dues, the *Sertic* court permitted them to clarify this ambiguity in a democratic fashion as required by the Act.

On the other hand, in the present case the evidence shows that, absent the fraudulent "stuffing" of the ballot box, the proposal to increase dues would have been defeated. Thus, the will of the union members was manifested clearly through their actual ballots, and the Court believes that to allow the increase to stand, contrary to the democratically expressed intent of the union members, would dilute their rights under the Act. Even though under the *Sertic* procedure the members would be allowed to express their will regarding disposition of the improperly-collected funds, the Court believes that granting such a "second chance" would not, under the circumstances of this case, be the equivalent of implementing the manifest will of the members as expressed through the original ballot, and as required by the Labor-Management Reporting and Disclosure Act. On this record, the Court cannot in equity and good conscience allow the victims of an egregious fraud to lose their rights simply because a majority of members might subsequently decide to waive restitution of the increased dues which were fraudulently collected.

The Court believes, therefore, that the presence of actual fraud in this case distinguishes it from *Sertic* and requires that each victim of that fraud be entitled to receive a refund of the increased dues unlawfully collected. Any members of plaintiffs' class may, of course, freely and voluntarily waive their right to a dues refund if they so choose, but any such waivers shall not prejudice the right of any other class members to receive a refund.

### 2. *The IBT*

The Court further finds that the IBT aided and perpetuated the inequities of an improper election under 29 U.S.C. § 411 by continued collection and distribution of the increased dues. During the period from February 9, 1976, to November 1, 1976, the IBT had the sole and absolute control over the affairs of Local 413. Even though the IBT knew that the dues increase was unlawful, and despite demands for refunds, the IBT continued the collection of the dues increase. The Court finds that IBT's actions to be in reckless disregard of the right of the members of Local 413 not to be assessed dues increases except in compliance with 29 U.S.C. § 411, and that the plaintiff class has been damaged by the IBT's actions.

The IBT argues that the continued collection of the dues increase was reasonable in light of the civil action challenging the imposition of the trusteeship. That civil action sought, *inter alia*, restoration to the local of all funds expended during the trusteeship. Thus, the IBT contends that it may have subjected itself to liability to Local 413 if it had ceased collection of the dues increase during the course of a trusteeship later found to be unlawfully imposed.

The evidence in this case does not show that the IBT was seriously concerned that the civil action initiated by defendant Mango had a substantial likelihood of removing the trusteeship, especially following the commencement of criminal proceedings against Mango. Even if there was such a concern, the Court believes that the IBT should have been equally concerned with the propriety of continued collection of a dues increase known to have been unlawfully imposed. The Court agrees with the plaintiffs' suggestion that, at the very least, the IBT was under an obligation to set aside the increased dues collected so that these funds would be available for immediate refunding to the membership.

The IBT also contends that all of the increased dues collected during the trustee-

ship were lawfully expended for the benefit of the members of Local 413 so that any liability for a refund should fall solely with Local 413. As the Court has noted above, one of the purposes of the Labor-Management Reporting and Disclosure Act of 1959 was to insure that rank and file members of a union would have a say in the operation of that union. Following the imposition of the trusteeship, the only say in the affairs of Local 413 was that of the IBT. The constitution and by-laws of Local 413 had been suspended, the officers were removed, and general membership meetings were discontinued. Under this absolute rule of the IBT the members of Local 413 had no ability to rescind the dues increase if they so desired. Although the operation of Local 413 by the IBT may well have been in the best interests of the membership, the members were denied the opportunity to approve or disapprove of the expenditure made on their behalf of the increased dues which had been collected. The contention of the IBT that it was an enlightened monarch can gain no more favor with this Court than can Local 413's defense that it was a benevolent despot.

▮ Among the autocratic powers possessed by the IBT was the power to cease collection of the dues increase, or to at least preserve the funds in a separate account. The IBT did neither. Thus, although the IBT had no involvement in the fraudulent February 1975 election, its continued collection of the dues increase with no provision for repayments, and with knowledge that the dues increase was unlawfully imposed, and with the power to correct or at least cease aggravation of the injury to the members, renders it liable for damages to the plaintiff class in an amount equal to the increased dues collected after February 9, 1976, until the cessation of the increased dues collection in November 1976.

▮ The plaintiffs seek an award of punitive damages against the IBT. See, *International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Braswell*, 388 F.2d 193 (5th Cir. 1968). Even though the record clearly demonstrates that the IBT acted in disregard of the rights of the members of Local 413, the Court does not find evidence of actual malice or wilful and wanton misconduct of the egregious sort required to award punitive damages.

The Court does not believe that the rationale of *Sertic* applies to the liability of the IBT. The assets of the IBT, unlike the assets of Local 413, do not belong solely to the members of the local, and the payment of damages by the IBT would have relatively little potential for adverse effect on the members of plaintiffs' class.

▮ The Court believes that a brief comment is in order on the relationship of the obligation of defendant Local 413 to the liability of defendant IBT. The Court has found that Local 413 has an obligation arising in equity to restore to the members of plaintiffs' class the full amount of those funds which it improperly received, including those collected after imposition of the trusteeship, since Local 413 continued to exist as a separate legal entity and received the benefit of the continued collection of the increased dues. On the other hand, the Court has found that the IBT is liable at law for the damage caused to the members of the plaintiff class by the continued collection of dues after the imposition of the trusteeship since the IBT exercised absolute control over the affairs of Local 413 and Local 413 lacked the ability to refuse to continue collection of the increased dues. Notwithstanding the fact that the equitable obligation of Local 413 is separate and distinct from the legal liability of the IBT, however, it is not the intention of the Court that a member of plaintiffs' class obtain a recovery in excess of the total amount of dues improperly collected from that member. To permit the members of plaintiffs' class to obtain full restitution from Local 413 plus damages from the IBT would in effect amount to a penalty to which the Court has found plaintiffs are not entitled. Thus, the plaintiffs may elect to satisfy their judgment from either or both Local 413 and the IBT, but they shall have only one recovery of their loss.

### 3. Vito Mango

The Court finds that defendant Mango unlawfully embezzled, stole and converted to his own use or the use of another the following funds in violation of his fiduciary responsibilities under 29 U.S.C. § 501 to Local 413:

1. $74.34 for obtaining 1600 ballots and 2000 reply envelopes from Universal Printing Company;
2. $95.27 for airline tickets for Wilma Lannon;
3. $2,257.20 for the lease of an executive jet;
4. $108.26 for lodging at the Water Tower Hyatt House.

Under 29 U.S.C. § 501(b) the Court has the jurisdiction to award damages in favor of Local 413 and against defendant Mango as a result of his breach of fiduciary duties. In this case, however, neither plaintiffs nor Local 413 have presented evidence upon which the Court could make a nonspeculative determination of damages. Local 413 has requested the Court to hold defendant Mango liable for the amount of all unlawfully collected dues which Local 413 is required to refund to its members. In ruling on the motion of Great American Insurance Company for summary judgment in this case, this Court stated that "[a]n order requiring that funds obtained fraudulently be returned does not place the local union in any worse position than it would have been if the fraudulent acts had not been committed." The Court adheres to that view and finds that the obligation of Local 413 to return money that it was never entitled to collect does not constitute damages recoverable under 29 U.S.C. § 501(b).

Although defendant Mango's breach of his fiduciary duties may have caused Local 413 to incur expenses, such as the cost of an accounting, which would be recoverable as damages under 29 U.S.C. § 501(b), there is simply no evidence in this record which permits the Court to determine the amount of any such damages. The burden of proof was on the plaintiffs and defendant Local 413 to present evidence of damages, and that burden of proof was not met.

### ORDER

Local 413 ceased the collection of the dues increase effective November 1, 1976, with an apparent acknowledgement that the increase was unlawful from the outset. There is no indication that Local 413 or the IBT have any intention of collecting further increased dues as a result of the February 1975 election. Plaintiffs' prayer for injunctive relief against collection of the dues increase is therefore moot.

It is ADJUDGED and DECREED that the February 1975 dues election was not conducted in accordance with the mandatory safeguards of 29 U.S.C. § 411. Local 413 has an equitable duty to the members of plaintiffs' class to make restitution of the improperly collected dues. The IBT is liable to the members of plaintiffs' class for damages arising out of the continued collection of the dues increase after February 9, 1976, in the amount of the increased dues collected during the period of the trusteeship. Defendant Vito Mango breached fiduciary duties owed to Local 413 in violation of 29 U.S.C. § 501.

The plaintiffs have also sought an accounting of the dues increase illegally collected, and the Court believes that they are entitled to this relief. Defendant Local 413 is hereby ORDERED to conduct an accounting of all increased dues collected as a result of the February 1975 election. This accounting shall specify for each member the amount of increased dues collected between April 1975 and February 8, 1976, and the amount collected between February 9, 1976, and November 1, 1976. Although Local 413's counsel stated in closing statements that such an accounting is infeasible, at the hearing held June 14, 1977, on class certification, Mr. Edwards testified that the ledger cards required for such an accounting were readily available. In fact, at that hearing references were made to the fact that such an accounting was already in progress and nearly one-half complete.

Counsel for plaintiffs shall submit a schedule of fees within twenty (20) days of

the date of this order. Opposing counsel may respond within ten (10) days thereafter.

Upon receipt of counsels' memorandum concerning fees, the Court will enter final judgment in accordance with this opinion.