Johnnie D. STOLZ, Dean L. Stolz, James Barth, and Gus Flangas, Plaintiffs,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL UNION NO. 971, Defendants.

No. CV–R–84–11–ECR.

United States District Court, D. Nevada.

Oct. 15, 1985.

Chan G. Griswold, Reno, Nev., for plaintiffs.

Michael B. Roger, Van Bourge, Allen, Weinberg & Roger & Rosenfeld, San Francisco, Cal., and Nathan Jenkins, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

In this case, plaintiff has sued on behalf of himself and all others similarly situated. According to the complaint, defendants have allegedly violated § 101(a)(3) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(3). Defendants' alleged transgressions consist in improperly combining the proposition of a wage increase with that of a "dues check-off" in one question at the December, 1982, union election, thereby denying the union membership the right to vote on each issue separately. In addition, plaintiff contends that defendants' allowing retired members to vote on the proposition was improper, in that retirees have no right to vote in union elections. As the vote on the two propositions passed by a margin of almost 200, the union began to collect the dues check-off on January 1, 1983, and has continued to do so until the present. In that plaintiff alleges that the Local collected these dues illegally, he demands full restitution and punitive damages of $10,000. Additionally, plaintiff seeks a permanent injunction restraining defendant from collecting or imposing further dues.

Plaintiff has moved this Court to certify as a class all Local members from whom dues were collected. Further, plaintiff has moved for summary judgment on the issue of the defendant's liability. Defendant opposes the class certification, and argues that an evidentiary hearing is necessary to test the adequacy of plaintiff's representa-

tion of the class. Additionally, defendant opposes plaintiff's motion for summary judgment, and argues that this action is barred by the applicable statute of limitation and the doctrine of laches. Because the statute of limitations and laches could dispose of this case immediately, the Court will consider these questions first.

STATUTE OF LIMITATIONS

Because the LMRDA, as with many federal labor statutes, contains no statute of limitations itself, courts have had to borrow an analogous state or federal statute in order to fill that gap. The Ninth Circuit has held that the applicable statute for the LMRDA is the state statute for the alleged violation for statutorily created rights. *See Trotter v. International Longshoremen's and Warehousemen's Union,* 704 F.2d 1141 at 1143, n. 2 (9th Cir.1983); *Copitas v. Retail Clerks International Association,* 618 F.2d 1370, 1372 (9th Cir.1980). Because most of the state statutes regarding the violation of statutorily created rights are three years in length, the statute for the LMRDA in the Ninth Circuit has also generally been three years. *Id.*

In June of 1983, however, the United States Supreme Court decided *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In that case, the Court decided that the applicable statute for actions arising under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.,* (LMRA) would no longer be the most closely analogous state statute, but would instead be the six-month statute found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Id.* at 169–172, 103 S.Ct. at 2293–2294. Although the LMRDA is distinct from the LMRA, several circuits have applied the six-month limitation of *DelCostello* to causes of action under the LMRDA. *See Vallone v. Local Union No. 705, International Brotherhood of Teamsters,* 755 F.2d 520 (7th Cir.1984); *Local Union No. 1397, United Steelworkers of America, v. United Steelworkers of America,* 748 F.2d 180 (3rd Cir.1984). *See also Barnett v. United Air Lines,* 738 F.2d 358 (10th Cir.1984) (*DelCostello* limitation applies to actions under the Railway Labor Act, 45 U.S.C. § 151).

■ The Ninth Circuit has not yet indicated whether it will apply *DelCostello* to cases arising under the LMRDA. In fact, in the only case discussing the application of *DelCostello* outside the LMRA, the Circuit has specifically reserved the question of whether it will apply the case in any context broader than that specifically indicated by the court itself in *DelCostello. Klemens v. Air Line Pilots Association,* 736 F.2d 491, 499 n. 7 (9th Cir.1984) *cert. denied,* —— U.S. ——, 105 S.Ct. 435, 83 L.Ed.2d 362 (1984). When the Circuit has applied the *DelCostello* rule in LMRA cases, moreover, it has routinely refused to give it retroactive application. *See Barina v. Gulf Trading and Transportation Co.,* 726 F.2d 560 (9th Cir.1984); *McNaughton v. Dillingham Corp.,* 722 F.2d 1459 (9th Cir.1984) *cert. denied,* —— U.S. ——, 105 S.Ct. 291, 83 L.Ed.2d 227 (1984); *Edwards v. Teamsters Local Union No. 36,* 719 F.2d 1036 (9th Cir.1983) *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Scoggins v. Boeing Co., Inc.,* 742 F.2d 1225 (9th Cir.1984) (suggesting that *DelCostello* should be limited to suits against employers, and has no application to suits against unions). This Court need not consider the question of whether the *DelCostello* limitation must apply in LMRDA actions, therefore, for even if it did, the Court would not give it retroactive application in this particular case.

In *Edwards v. Teamsters Local Union No. 36, supra,* the Circuit considered the propriety of applying *DelCostello* to an LMRA action retroactively. In declining retroactive application of the case, the court set forth three factors to consider:

First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ..., or by deciding an issue of first impression whose resolution was . not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh

the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 1040 (citing *Chevron Oil Co. v. Huson,* 404 U.S. 97 at 106–07, 92 S.Ct. 349 at 355, 30 L.Ed.2d 296 (1971)).

In the present case, it is clear that the first *Edwards* factor has been satisfied. If *DelCostello* does apply to LMRDA actions, it will effectively overrule the previous statute of limitations for such actions in the Ninth Circuit. *See Trotter, supra,* and *Copitas, supra.* The previous statute constituted a clear precedent on which plaintiff could have justifiably relied. In addition, although a concurrence in a Supreme Court case on a tangentially related subject touched on the holding in *DelCostello, see United Parcel Service v. Mitchell,* 451 U.S. 56, 65–71, 101 S.Ct. 1559, 1565–1568, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring), it could not be said to have "clearly foreshadowed" the result in the later case. *Edwards, supra,* at 1040.

As regards the second criterion, it seems that the nonretrospective application of the *DelCostello* rule in this case will not retard the rule's future operation. The court noted in *DelCostello* that the new rule's purpose was to establish a uniform system which would accord employees a satisfactory opportunity to vindicate their rights under the LMRA. *DelCostello, supra,* 462 U.S. at 171–72, 103 S.Ct. at 2294. With this purpose in mind, it seems unlikely that nonretroactive application of the rule in this circumstance will retard the Court's plan, in that *DelCostello* creates a procedural limitation, rather than substantive rights which the Court would have to acknowledge even retroactively.

Finally, the balance of equities required by the third prong of the *Edwards* test tips clearly in favor of the plaintiff in this case. As the LMRDA requires, plaintiff pursued internal union remedies for eight months until August of 1983. Plaintiff filed suit in January of 1984, exactly one year after the allegedly illegal election took place. Hence, plaintiff was well within the three-year requirement of the previous statute of limitation for LMRDA action. Moreover, although this would not be in strict compliance with *DelCostello* if it were to be applied, by filing one year after the action arose plaintiff has not "slept on his rights." Instead of waiting until the end of the then existing statute of limitations period, the plaintiff managed to file this action before even one third of it had managed to expire. In this sense, this Court must find that the equities favor the plaintiff in that he has managed to prosecute this action in a timely manner. The *DelCostello* rule, therefore, will not be applied against him retroactively.

In addition, for the same reasons stated above, the Court finds untenable defendants' contention that the doctrine of laches also bars the present cause of action. Laches is an equitable doctrine which prevents the prosecution of a cause of action in which the plaintiff has clearly disregarded the time element. Normally, the doctrine will not apply where the plaintiff has filed his action within the period specified for the analoguous action at law, and where the defendant has not been prejudiced by the delay in filing the suit. *Shouse v. Pierce County,* 559 F.2d 1142 at 1147 (9th Cir.1977).

In the present case, the plaintiff has filed his action within the Ninth Circuit's presently applicable statute of limitations for LMRDA actions. Even if the *DelCostello* limitation ultimately supplants the earlier statute, moreover, plaintiff has not necessarily filed this action too late. As one court has noted, a plaintiff in an action under the LMRDA must exhaust reasonable internal union procedures for a four-month period after the cause of action

accrues. *Connor v. Highway Truck Drivers and Helpers, Local 107*, 378 F.Supp. 1069 (E.D.Pa.1974) (citing 29 U.S.C. § 411(a)(4)). Because of this four-month obligation, the plaintiff is necessarily delayed in bringing an LMRDA action in a court of law. With this in mind, there is less than an eight-month lapse of time between the present plaintiff's exhaustion of union remedies and the filing of this suit. Such a delay cannot be considered unduly. *Connor, supra*, at 1072.

Additionally, the defendants have not shown that they have been prejudiced by the delay in the filing of this suit. The fact that plaintiff's action was not filed until eight months after the exhaustion of union remedies does increase the potential amount of dues which may ultimately have to be returned by the defendant. This, however, cannot be said to be prejudicial, in that if plaintiff ultimately proves his case, these dues will have been illegally collected in the first place. Thus, finding that defendants have been unduly prejudiced in the present case by the delay in the filing of the complaint would allow the defendants to profit by their potentially illegal act. The Court therefore finds that the doctrine of laches is inapplicable in the present case.

RESTITUTION

In addition, the Court must disregard defendants' contention that restitution of illegally collected dues is an inappropriate remedy under the LMRDA. Although, as defendants indicate, federal courts do not have *carte blanche* to interfere in internal union matters under the LMRDA, *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 471 n. 10, 88 S.Ct. 643, 648 n. 10, 19 L.Ed.2d 705 (1968), neither do unions have the power to keep illegally collected dues in their coffers. In *Teas v. Local 413, International Brotherhood of Teamsters*, 504 F.Supp. 12 (S.D. Ohio 1978), for example, the court found that restitution of illegally collected dues was proper under the LMRDA. Even though the union had lawfully expended the dues for the benefit of the membership,

the court found that the union could not avoid the fact that the dues had been collected illegally. "One of the purposes of the [LMRDA]", found the court, "was to insure to rank and file union members that union affairs would be conducted pursuant to fair and democratic principles and not by the arbitrary acts of union leaders." *Id.* at 17 (*citing National Labor Relations Board v. Allis-Chalmers Manufacturing Co.*, 388 U.S. 175, 194–95, 87 S.Ct. 2001, 2013–14, 18 L.Ed.2d 1123 (1967)). To permit the union to retain the dues simply because it had spent them for the member's benefit would frustrate the purposes of the LMRDA, the court concluded, and it therefore ordered restitution of all dues collected in violation of the Act. *See Gravenstein v. Campion*, 96 F.R.D. 137 (D.Alaska 1982) (restitution is a proper remedy under the LMRDA); *Peck v. Associated Food Distributors of New England*, 237 F.Supp. 113 (D.Mass.1965) (dues wrongfully collected are repayable under the Act).

In the current case, it is also clear that restitution is a proper remedy for the alleged violations of the Act. Despite defendants' protestations, the court can order repayment of illegally collected dues, even where the dues were ultimately lawfully expended for the members' benefit. *Teas, supra*. Additionally, restitution may well place the union in a precarious financial position, but it must be remembered that restitution will only be ordered where the dues have been illegally collected in the first place. *Id.* Allowing the union to keep illegally collected dues, even where hardship is imposed, would frustrate the purposes of the Act. *Id.* Moreover, the Court is not now ordering restitution, and it may later appear that some other sort of injunctive relief, such as ordering an election that does comport with the requirements of the Act, will be required before restitution can be ordered. Therefore, the Court has no difficulty in dismissing defendants' motion to disqualify restitution as relief in this case.

MOTION FOR EVIDENTIARY HEARING

 The Court finds that an evidentiary hearing or further discovery on various class certification issues, which the defendants have requested, are unnecessary, and finds that the prerequisites to the maintenance of a class action have been satisfied. The Court need resort to an evidentiary hearing or allow discovery in the certification stage of a class action only where the record itself is insufficient to make the determination. As the Ninth Circuit has noted, all that is required of the district court when certifying a class is that that it analyze the allegations of the complaint and other materials in the record, and that it consider the nature and range of proof necessary to establish those allegations. *Blackie v. Barrack,* 524 F.2d 891 at 900–01 (9th Cir.1975) *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *see also, United National Records, Inc. v. MCA, Inc.,* 99 F.R.D. 178, 180 (N.D.Ill.1983) (court is limited to a liberal inquiry into *plaintiff's* claims in determining whether Rule 23 has been met) (citing, *Blackie v. Barrack, supra; Eggleston v. Chicago Journeymen Plumber's Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981) *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982)); *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 358 (E.D.Pa.1976) (all that is required is that the court have sufficient material before it to determine whether Rule 23 has been satisfied) (citing, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Although evidentiary hearings have often been used before the certification determination, they are by no means required, and are usually employed to assist the *plaintiff* in demonstrating the existence of the class. *Social Services Union, Local 535 v. County of Santa Clara,* 609 F.2d 944 (9th Cir.1979); *Mead v. Parker,* 464 F.2d 1108, 1112 (9th Cir.1972). Additionally, it should be noted that the certification of the class is not an immutable decision. If it later appears that plaintiff fails to meet any of the requirements of Rule 23, the certification may be withdrawn. *Social Services,* at 948. Having reviewed the entire record, this Court finds it sufficient to make the certification determination without further delay.

CLASS CERTIFICATION

 In opposing the motion to certify defendants initially claim that it has not been made as soon as practicable, as required by Rule 23(c)(1), and that certification must therefore be denied. This contention is without merit. Plaintiff's motion to certify was filed one year after the filing of the complaint, and several courts have noted that a year's time between filing of complaint and the motion to certify will not prevent certification. *See, Souza v. Scalone,* 64 F.R.D. 654, at 656 (N.D.Cal.1974) *vacated on other grounds,* 563 F.2d 385 (1975). In addition, it appears that a delay in filing the motion alone will not be cause for denial of certification. There must also be a showing that the delay has somehow prejudiced the party opposing the motion. *See Chambers v. McLean Trucking Co., Inc.,* 550 F.Supp. 1335 at 1345 (M.D.N.C. 1981); *Muth v. Dechert, Price & Rhoads,* 70 F.R.D. 602, 606 (E.D.Pa.1976). This the plaintiff has failed to do, which compels the Court to find that the motion to certify has been filed in a timely fashion.

A. *Applicability of Fed.R.Civ.P. 23 and 23.2.*

In suits involving unincorporated associations, the standards of Fed.R.Civ.P. 23.2 apply. This rule provides that:

[a]n action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(e).

There is substantial dispute in the cases as to whether this rule supplants entirely the normal class action provisions of Rule 23 as far as unincorporated associations are concerned. Some courts have argued that a class action by such an association need satisfy only the provisions of Rule 23.2. *See Gay Lib v. University of Missouri*, 416 F.Supp. 1350 at 1360 (W.D.Mo.1976), *rev'd on other grounds*, 558 F.2d 848 (8th Cir. 1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978); *Management Television Systems, Inc. v. National Football League*, 52 F.R.D. 162, 164 (E.D.Pa. 1971). These courts argue, in essence, that the language of Rule 23.2 and the fact that it refers to some, but not all of Rule 23's provisions indicate that 23.2 was intended to govern completely class actions by unincorporated associations.

Other courts, however, contend that Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation apply to class actions of unincorporated associations, in spite of Rule 23.2. *See Gravenstein v. Campion*, 96 F.R.D. 137, 140 (D.Alaska 1982); *Sembach v. McMahon College, Inc.*, 86 F.R.D. 188, 192 (D.C.Tex.1980); *see also*, Note, *Capacity and Class Actions Under Federal Rule 23.2*, 61 B.U.L.Rev. 713, 730–34 (1981). Essentially, these courts argue persuasively that Rule 23.2 was enacted to grant unincorporated associations "entity status," thereby allowing them to sue and be sued as a body. At common law the unincorporated association was simply the sum of its members, and not a legal entity such as a person or a corporation. In order for the association to sue or be sued, all of its members had to be named parties to the action. *Gravenstein, supra*. The common law rule had to be abrogated, therefore, to give the unincorporated association status as a jural person. *Id.*

This is, therefore, the essential purpose of Rule 23.2. Advisory Committee's Note, Fed.R.Civ.P. 23.2. In this sense, Rule 23.2 supplements Rule 17, by allowing unincorporated associations the same legal status as a person or corporation. Rule 23 therefore remains unsullied by Rule 23.2, and a labor union, or those representing the union's membership must comply with its provisions when bringing a class action suit.

### B. *Rule 23 Factors*

In order for a lawsuit to proceed as a class action, the plaintiff must first demonstrate that he has met the numerosity, commonality, typicality, and representative requirements of Fed.R.Civ.P. 23(a). *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir.1976). Although these factors must be satisfied, they are not necessarily exhaustive of the class action prerequisites. *Kamm v. California City Development Co.*, 509 F.2d 205 (9th Cir.1975). The court may also examine whether a class action is a superior method of trying the issues, in light of the entire judicial system, potential class members, the present plaintiffs, attorneys for the litigants, the public at large, and of the defendant. *Id.* at 212. Once the prerequisites for the class action have been satisfied, the case must fit into one of the three subdivisions of Rule 23(b) in order to proceed. *Green, supra.*

### 1. *Class definition.*

Although not specifically mentioned in Rule 23(a), a class must be sufficiently definite in order to warrant certification. As one court has stated, "[t]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D.Cal.1977); *see Rutherford v. United States*, 429 F.Supp. 506 (W.D.Okl. 1977), *rev'd on other grounds*, 442 U.S. 544, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1978).

The plaintiff in the present action has not supplied the Court with a specific definition, but the Court may fashion one of its own when necessary. *Metcalf v. Edelman*, 64 F.R.D. 407 (N.D.Ill.1974). In this case, the class consists of all union members who

have allegedly suffered the denial of their rights by the December, 1982, election. This class is therefore comprised of all members of Local 971 eligible to vote at the time the alleged violation occurred. Additionally, the class should include all 971 members which have worked or are working under the present contract between the union and the Associated General Contractors, in that members who have joined the union after the election are still subject to the allegedly illegal dues checkoff.

## 2. *Numerosity.*

■ The numerosity requirement of Rule 23(a)(1) merely requires that the class be large enough as to make joinder impracticable. *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–13 (9th Cir.1964). Under the court's definition and according to the record, the potential class members would number close to 700. Such a large class of plaintiffs clearly makes joinder of all parties into a single action impracticable. *Harris, supra; see Gonzales v. Sheely,* 96 F.Supp. 1004 (D.Ariz. 1951) (class of 300 sufficient). Thus, the numerosity requirement has been satisfied.

## 3. *Commonality.*

Rule 23(a)(2) requires that questions of law or fact must be common to all members of the class in order for the class to be certified. This provision of the rule has not been interpreted to mean that all claims of the class members must be identical, but merely that a common significant thread of law or fact run throughout all of the claims. As the Ninth Circuit has noted, the Rule "does not require that all the members of the class be identically situated, if there are substantial questions of law or fact common to all." *Harris, supra,* at 914.

■ In the present case, a common question of fact and law exists in the controversy surrounding the propriety of the December, 1982, elections. If a violation of the LMRDA is proved, the class members will have suffered identical injury, in that

they all will have been denied their voting rights, and they will have all been forced to pay illegally approved dues. In this sense, it is clear that common questions of fact and law predominate in this action, and that class action is an appropriate method for resolving them. *See Rota v. Brotherhood of Railway, Airline and Steamship Clerks,* 64 F.R.D. 699 (N.D.Ill.1974) *rev'd on other grounds* 489 F.2d 998 (7th Cir. 1974) (class actions can be maintained under LMRDA, in that common questions of fact and law usually predominate).

## 4. *Typicality.*

■ In order to gain class certification, the class representative himself must demonstrate that his claims are typical of those of the entire class. In *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496 (9th Cir.1980), the court noted that the named representatives must be injured in the same manner as the rest of the class. *Id.* at 505 (citing *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975)). In the present case, it is clear that the class representative, Stolz, has allegedly been injured in the identical manner as the rest of the class, in that the elections which may have violated class rights have had an identical effect on him. Thus, his claims are typical of the remainder of the class. *See Rota, supra,* at 706.

## 5. *Adequate Representation.*

Rule 23(a)(4) indicates that the named representative must represent the interests of the unnamed class members adequately. This section of the Rule reaches constitutional dimensions, in that the outcome of the class action is binding on all class members. *Hansberry v. Lee,* 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940); *Scott v. University of Delaware,* 601 F.2d 76, at 85 (3rd Cir.1979) *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). Our circuit has held that adequate representation depends on quality of the representative's counsel, an absence of class antagonism, a sharing of interests between the representative and the absent class mem-

bers, and the unlikelihood that the suit is collusive. *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir. 1982) *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

In the present case, defendant alleges that the plaintiff's interests in the outcome of the litigation are antagonistic to at least part of the class, in that not all of the class is opposed to the dues increases. Defendants' argument carries some weight to it, for not all of the class could have been opposed to the dues increase or it certainly would not have passed at the December, 1982, election. Nonetheless, the possible antagonism alleged by the defendant is not sufficient to prevent plaintiff from being named class representative, for several reasons.

Initially, the gist of plaintiff's complaint is not only that he is opposed to the dues check-off, but that the manner in which the check-off was approved—namely, by combining that question with a pay increase proposal—was improper, and violated his statutory rights. Therefore, even if a class member approves highly of the dues increase, he may still strongly disapprove of the fact that it was brought about in an illegal manner. In that all union members have a co-extensive interest in seeing the provisions of the LMRDA enforced, plaintiff's attempt to enforce the provisions of this act can hardly be antagonistic to the interests of the rest of the class. *Gates v. Dalton*, 67 F.R.D. 621, 630 (E.D.N.Y.1975).

Additionally, it is possible that the members which voted for the combined wage increase and dues check-off would have voted against the dues check-off if it had been proposed alone. The combination of the wage increase may have been enough sweet to overpower the bitter of the dues increase which normally would have been defeated if voted on alone. It is impossible to say, therefore, as defendants contend, that all members which voted for the package are necessarily opposed to the plaintiff's position.

Moreover, even if it were possible to align all members of the union which voted for the package against the plaintiff, plaintiff could still be named adequate representative of the class. In *Horton v. Goose Creek Independent School District*, 677 F.2d 471 (5th Cir.1982), a group of students and parents challenged the constitutionality of canine "sniff" searches at local schools. Plaintiffs sought to maintain the suit as a class action, representing all students of the school district. *Id.* at 487. The school district argued that the plaintiffs were not adequate class representatives, in that a significant number of student and parent members of the class approved highly of the searches. This, in the school district's opinion, represented the type of class antagonism which prevented the naming of a class representative.

The Fifth Circuit disagreed. The court noted that

"[i]n any conceivable case, some of the members of the class will wish to assert their rights while others will not wish to do so.... Another familiar class suit is that in which one or more taxpayers of a community, suing on behalf of all, challenge the validity of a proposed public expenditure. It is difficult to believe that there ever has been such a case in which a good many taxpayers would not have preferred to have their rights enforced, because of their interest in having the expenditure made. Yet no one has ever doubted the propriety of bringing such a suit as a class action."

*Id.* at 490 (quoting, Wright, Class Actions, 47 F.R.D. 169, 174 (1969)). Therefore, although the court found that the district court should properly concern itself with the interests of the absent class members, that concern should not preclude certification of the class where the court could devise a method of assuring representation of all interests.

In *Goose Creek*, the court found it unnecessary to develop new methods for protecting the interests of the dissenting class members, as it found that the parties to the action adequately represented the interests

of all absentees. *Id.* "Though some members may disagree with the named plaintiffs," the court found, "their position has been asserted energetically and forcefully by the defendant, which has argued that the school administration must be able to use these searches in order to combat a serious drug problem." *Id.* *Accord, Dierks v. Thompson,* 414 F.2d 453, 457 (1st Cir.1969); *Sturdevant v. Deer,* 73 F.R.D. 375 (E.D.Wis.1976); *Rota v. Brotherhood of Railway, Airline, and Steamship Clerks, supra.* Therefore, the court found that all class members' interests were adequately represented, if not by the plaintiffs, then by the defendants.

In the present case, the possible difference of opinion regarding the necessity of the dues check-off should not defeat the certification of the class. While it appears that some of the class members support the dues program, it is certain that the union will vigorously represent those interests at trial. Plaintiff will represent those class members who do object to the dues check-off and the manner in which it was approved. In this sense, it cannot be said that any class antagonism will prevent all class interests from being represented adequately.

■ Defendants also argue that plaintiff would make a poor class representative, in that Rule 23.2 requires that a representative must adequately represent not only the *members* of the association, but the *association* itself. Because the plaintiff is suing the union, contend defendants, it is impossible for him to represent its interests in this litigation. Defendants cite no case authority for this novel interpretation of the Rule. Indeed, this is hardly surprising, for this interpretation would make it impossible for the membership of a union to bring a class action against its union under the LMRDA. In that the interests of the union itself and those of the union's membership will always be in opposition when a dispute under the LMRDA is being litigated, it is unreasonable to expect the class representative to represent the interests of the union as well.

*Gravenstein v. Campion,* 96 F.R.D. 137 (D.Alaska 1982) is instructive. In that case, the defendant union also argued that the named representatives of the class had to demonstrate that they would represent adequately the interests of both the membership *and* the union. *Id.* at 139. If this interpretation of Rule 23.2 were the correct one, the court held, then it would be impossible for members to sue their own union for violations of the LMRDA. *Id.* at 140. "This result," concluded the court, "would conflict with the legislative goal of protecting union members from improper practices of union management, or an unscrupulous majority of the membership." *Id.* (citing *Kerr v. Shanks,* 466 F.2d 1271, 1276 n. 3 (9th Cir.1972) ). In addition, it has already been stated above that Rule 23.2 was enacted in order to allow unincorporated associations "entity status," and not to circumvent the normal class action requirements of Rule 23. Clearly, the named representative must only represent adequately the interests of his side of the litigation as required by Rule 23 when bringing an action under the LMRDA. In this sense, defendants' contention is groundless and must be disregarded.

### 6. *Rule 23(b).*

Having decided that the prerequisites have been satisfied, the Court must determine into which category of Rule 23(b) the action fits. *Green, supra.* Because of the nature of the defendant's alleged conduct, and because of the nature of the remedy sought, the case falls squarely within the ambit of Rule 23(b)(2). This portion of the rule concerns actions in which "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2).

Plaintiff asks this Court to declare the December, 1982, election to have been conducted in violation of the LMRDA, to award restitution of all dues paid as a result of that election, to issue a permanent

injunction restraining the defendant from collecting dues, and to award the class punitive damages of $10,000. Because plaintiff requests monetary relief, the defendants argue that certification under 23(b)(2) is improper, in that the provision is limited primarily to suits involving only injunctive or declaratory relief.

■ Defendants' contention is without merit. The Advisory Committee's Note to Rule 23 states that 23(b)(2) certification is inappropriate only where the "final relief relates *exclusively or predominantly* to money damages." *See*, Advisory Committee's Note, 39 F.R.D. 98, 102 (1966) (emphasis added). In a case such as this, where the monetary relief is merely one element of an equitable remedy, and is only ancillary to the injunctive or declaratory relief sought, certification under 23(b)(2) is not precluded. *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 801–02 (4th Cir.1971) *cert. dismissed*, 404 U.S. 1006–07, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir.1969).

Courts have also recognized that certification under 23(b)(2) is especially proper for actions under the LMRDA, in that the action complained of is always applicable to the entire class, and injunctive relief is normally sought as the major remedy. In *Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa.1979), a group of plaintiffs brought an action under the LMRDA, alleging that a dues increase had been approved by the union membership in violation of the notice and secret ballot requirements of the Act. Plaintiffs also sought to certify the case as a class action under Rule 23(b)(2), but the defendants objected, contending that 23(b)(2) certification was unavailable where the plaintiff had requested monetary relief.

In allowing certification, the court noted that the initial level of inquiry in deciding whether a case fits into Rule 23(b)(2) is whether the defendants have allegedly acted on grounds generally applicable to the entire class. If this is the case, then injunctive relief is appropriate and necessary to remedy the wrong, and any monetary relief, such as restitution, is collateral to the main issue. *Id.* at 147. In that the issue of the dues increase election was applicable to the entire class, the court allowed certification under 23(b)(2) in spite of an incidental claim for monetary relief. *Id.*

This case presents the identical situation which confronted the court in *Hummel*. First, defendants have allegedly violated a duty under the LMRDA which they owed to the entire union membership, thus making injunctive relief an appropriate remedy if the violation is ultimately proved. Additionally, even though plaintiff has requested monetary relief, it appears to the court that he seeks primarily injunctive relief. As *Hummel* illustrates, the inclusion of a claim for monetary relief will not defeat the certification of a case under 23(b)(2) as long as that claim is incidental to the request for injunctive relief. Therefore, Rule 23(b)(2) is the proper avenue under which to prosecute this action. *See Gravenstein v. Campion, supra*, (claim for monetary relief incidental to injunctive claim in LMRDA case, thereby making 23(b)(2) certification proper); *Smith v. B & O Railroad Co.*, 473 F.Supp. 572 (D.Md.1979) (23(b)(2) certification inappropriate only where final relief relates exclusively or predominantly to money damages); *Connor v. Highway Truck Drivers and Helpers*, 68 F.R.D. 370, 375 (E.D.Pa.1975) (claim under LMRDA can be certified under 23(b)(2) where claim for monetary relief incidental).

7. *Notice Under Rule 23(b)(2).*

One of the distinguishing characteristics of a class action under Rule 23(b)(2) is that no personal notice is strictly required to be given to absent class members. The Ninth Circuit has concurred with this general proposition. In *Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir.1977), *aff'd in relevant part, rev'd in part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the court considered the contention of a party opposing a class action that notice was required in all class actions, including those under Rule 23(b)(2).

The Ninth Circuit rejected this interpretation of the Rule, finding the weight of authority indicated that due process did not require notice in every (b)(2) action. *Id.* at 1228. "Only where necessary to provide class members an opportunity to signify whether representation by named plaintiffs is fair and adequate or to intervene to present additional claims or to otherwise come into the action ... does due process require the direction of some sort of notice to absent members of a (b)(2) class." *Id.* at 1229.

██ Under *Elliott*, the Court holds that no notice is necessary in this case. As discussed above, the Court has found the named plaintiff to be an adequate representative of this class. In this sense, no further input from absent class members is necessary. In addition, it appears to the Court that no claims outside of the ones already presented by the named plaintiff can have direct bearing or relevance in the outcome of this litigation. Thus, the Court finds that notice is not required in this action, and that the matter may proceed as a class action without damage to the due process rights of any of the class members.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has moved the Court, pursuant to Fed.R.Civ.P. 56(c), for summary judgment on the issue of the defendants' liability. A motion for summary judgment can only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). In that there are several genuine issues of material fact raised in the papers on file, the Court must deny plaintiff's motion.

As stated above, plaintiff has brought this case under the LMRDA, section 101(a)(3), 29 U.S.C. § 411(a)(3). That section provides:

[e]xcept in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing at a general or special membership meeting, after a reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot.

29 U.S.C. § 411(a)(3)(A). Plaintiff's basic allegations are that the defendants breached their duty under this section by allowing retired members of the union to vote in the December, 1982, election which authorized the dues check-off system and wage increase. Additionally, plaintiff claims that the combining of the dues check-off issue with that of the wage increase into one question prevented voting on either issue by itself, thereby denying union members the right to a meaningful vote. In that there are material questions of fact surrounding both of the contentions, this Court must deny summary judgment altogether.

Initially, plaintiff has produced no evidence supporting his claim that retired members should not be allowed to vote in these elections. The Act itself states that all "members in good standing" must be allowed to vote in matters involving dues. 29 U.S.C. § 411(a)(3)(A). An earlier provision indicates that a "member in good standing" is:

... any person who has fulfilled the requirements for membership in such organization, and who has neither voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the

constitution and bylaws of such organization.

29 U.S.C. § 402(*o*).

In interpreting this provision, the Ninth Circuit has indicated that the definition of "member" is not limited to those persons recognized as such by the union. *See Brennan v. Local 357, International Brotherhood of Teamsters,* 709 F.2d 611 at 614 (9th Cir.1983). Instead, "[t]he Act provides rights to those persons who have fulfilled the requirements of membership despite the fact that union officials have not performed the ministerial acts necessary to give formal recognition to a person's status as a member." *Id.* (*citing Hughes v. Local No. 11 of International Association of Bridge, Etc.,* 287 F.2d 810, 815 (3rd Cir.1961) *cert. denied,* 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961), and *Parish v. Legion,* 450 F.2d 821, 824 (9th Cir.1971)). The court has also indicated that one remains a member of a union until one of two events occurs: (1) the member voluntarily withdraws from the union, or (2) the union expels or suspends the member after appropriate proceedings held pursuant to lawful constitutional or bylaw provisions. *Brennan, supra,* at 615 (*citing Alvey v. General Electric Co.,* 622 F.2d 1279, 1284 (7th Cir.1980); *Erkins v. Bryan,* 663 F.2d 1048, 1051 (11th Cir.1981), *cert. denied,* 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982)).

■ There is no indication in the record that retired members of the union have voluntarily withdrawn from membership, or that retirees are expelled or suspended pursuant to some constitutional or bylaw provision of the union. In this sense, a genuine issue of fact exists as to the membership and voting status of the retired members who voted in the December, 1982, election. *See Wirtz v. Independent Petroleum Workers of America, Inc., Local 1,* 307 F.Supp. 462 (N.D.Ind.1969) (a member on a two year leave of absence without pay who was not suspended despite not paying dues was a member in good standing for purposes of the Act). For this reason, the Court cannot grant summary judgment on this issue.

Plaintiff, however, also contends that the combination of two issues into one general referendum issue in the December, 1982, election violated the union membership's right to a meaningful vote on both subjects. In *Sertic v. Cuyahoga Lake, Geauga, & Ashtabula Cos., C.D.C.,* 423 F.2d 515 (6th Cir.1970), as plaintiff indicates in his motion, the Sixth Circuit held that the combination of two questions in the same ballot measure was prohibited by the LMRDA. In that case, the union had combined the authorization to negotiate a wage increase with the authorization to place a wage assessment for union dues purposes. *Id.* at 521. This, the court indicated, precluded a vote solely on the issue of the wage assessment, which denied the union membership the right to a meaningful vote on the question. *Id.*

If *Sertic* were the last word on this subject, plaintiff would probably be entitled to summary judgment. Other courts have held more recently, however, that the combination of two issues on the same ballot measure is not necessarily indicative of a lack of meaningful vote. In *Sheldon v. O'Callaghan,* 497 F.2d 1276 (2nd Cir.1974) *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974), a group of union members, relying primarily on *Sertic,* argued that their rights under the LMRDA had been violated when they were asked to approve an amended union constitution without being able to vote on each amendment individually. The Second Circuit held that it was unnecessary for the union to allow such a voting procedure, because "the adoption of some of those provisions and the rejection of others might have resulted in an unworkable document, and thrown the operation of the union into confusion." *Id.* at 1280. Therefore, because of the degree of interrelatedness in the provisions, the court held that the inability to vote on single issues separately did not constitute the loss of a meaningful vote.

■ Similarly, it appears to the Court that the two issues involved in this case, namely the authorization to negotiate a

wage increase and authorization for a dues check-off may well be as interrelated as the issues in *Sheldon.* As defendant indicates in the affidavit of Donald Alford, the Local's financial situation before the December, 1982, referendum was extremely precarious. Indeed, it appears that the dues increase may have been necessary for the Local's continued existence. In this sense, the question of the dues increase and the authorization to negotiate a wage increase may be related, in that the negotiation for the wage increase was contingent on the union's continued existence. The question of the interrelatedness of the two propositions which appeared on the December, 1982, referendum will thus have bearing on whether the union breached its duty to allow for meaningful elections, and constitutes a genuine issue of material fact not resolved by the pleadings and affidavits. *See Young v. Hayes,* 195 F.Supp. 911 (D.D. C.1961) (not required that all issues in union elections be stated in separate questions).

In addition, other courts have required that the plaintiff must show some intent to deceive or coerce on the part of the defendant in order to recover under the LMRDA. In *Brooks v. Local No. 30, United Slate, Tile and Composition Roofers, Camp and Waterproof Workers' Association,* 187 F.Supp. 365 (E.D.Pa.1960), the plaintiffs also argued that their rights under the LMRDA had been infringed by the union's use of a difficulty phrased ballot. *Id.* at 368. Although the court held that the union's use of the opaque language did not "reflect the highest standards of responsibility," it was also unwilling to state that the language constituted a *per se* violation of the Act. The fact that there was no showing of an intent to deceive or confuse in the language used and that no evidence was presented to indicate that any member was indeed misled by the ballot's language indicated to the court that no violation could lie under the LMRDA for the defendant's actions. *See Young v. Hayes, supra* (not necessary that all questions be stated

separately, as long as the ballot as a whole is not confusing or misleading); *see also Gilliam v. Independent Steelworkers Union,* 572 F.Supp. 168 (N.D.W.Va.1983) ("meaningful and informed vote" not denied where members given proper and adequate notice as to date and subject matter of vote, and where enough time was given to reflect on the issues and prepare effective support or opposition).

In the instant case, the Court cannot say that the ballot used in the election, even with the combined questions, evinces an intent to deceive or is confusing as a matter of law. It seems quite possible that a reasonable person could find that the ballot is perfectly clear as to its terms, and that there was no palpable intent to deceive in the Local's confining two issues in one question. Thus, this factor indicates another genuine issue of material fact which precludes the granting of plaintiff's motion for summary judgment.

IT IS, THEREFORE, HEREBY ORDERED that defendants' cross-motion for summary judgment on statute of limitations grounds is DENIED.

IT IS FURTHER ORDERED that defendants' motion for evidentiary hearing and further discovery is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to certify the class pursuant to Fed.R.Civ.P. 23(b)(2) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED.